The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Good morning. We're happy to hear argument in our third case, number 20-1790, Tayal v. Bank of New York Mellon. It's over. Mr. Brown? Good morning, Your Honor. Judge Moss, thank you. And Judge Agee and Judge Wynn. My name is Christopher Brown. I represent the appellant, Alkesh Tayal, in his appeal of the grant 12B-6 on the breach of fiduciary duty count against equity trustees, the denial of his motion to remand the case to state court, and the grant of summary judgment in favor of Bank of New York as trustee for a real estate mortgage investment conduit and SPS, the loan servicer. I want to begin by pointing out, you know, putting aside embarrassing typos, an error in my reply brief, and that is on page 15. And the docket page would be 18 of 29, where I say that SPS charged an eviction fee to Tayal's account and numerous other improper fees, including around $68,000 in corporate advances to Tayal's account, more than ever could be attributed to taxes and insurance. And the citation is, see opening brief page 68. It's clearly in error. I meant to cite to the opening brief at page 21 of 35, paragraph 38 of my fact section. And what we have there, I want to be clear about what I mean by corporate advances. I realize it's not explained. A corporate advance is made by a loan servicer when a loan is in default to advance certain payments, such as taxes and insurance. And when I say such as, that's all it is, really. There may be an instance where an HOA fee may be advanced, perhaps. And what these discovery documents received reflect was as cited in paragraph 38 of the second corrected opening brief, what amounts to about $68,000 in corporate advances that were allegedly paid by the servicer, reimbursed, and then they're charged to the account. Which brings us to the issue of material breach on the breach of contract claim. And I apologize to the court if it felt that my argument in opening brief was sparse. I agree that it was. And forgive me for feeling that this is a fairly straightforward issue on the breach of contract. But I will concede, something like those $68,000 in unlawful charges and an unlawful eviction fee is not a material breach to stop a foreclosure. That can be handled in the back end with the commissioner of accounts. When we're talking about whether or not we have a material breach. Counsel, as I understand your argument, you contended that, I presume the district court didn't have jurisdiction because it should have remanded the case? That is correct, Judge. That is correct. That is my position. And I can expound on that. Well, we need to know whether or not we have jurisdiction. Very good. I think it's clear that there's a fiduciary duty held by a trustee. I have an allegation of claim or breach of that duty by equity trustees. The case law is clear that the duty is both expressed and implied. It's within the contract and beyond the contract. And it will be reviewed. What is the breach? What is the breach of the duty you allege here? The duty is, Judge Wynn, is to remain impartial. And if there appears to be a legitimate dispute between the parties to the contract, the deed of trust, the lender and the borrower at the time that the power sale is invoked, there's a duty by the trustee to stop the sale to resolve that legitimate dispute, that bona fide sale. Equity is the... I'm sorry, Judge. Go ahead. I interrupted. Equity is the trustee under the deed of trust. They substitute trustee under the deed of trust. They've been substituted in. Yes, Your Honor. All right. So where do you get this duty from? From Hudson v. Barham from the Supreme Court of Virginia, from Crosby v. ALG trustee cited in my brief from... So how does Hudson impose a duty on the trustee? It imposes a duty to remain impartial and to cancel the sale and seek the assistance of the courts if there's a bona fide dispute between the parties. I don't think that's what that case says. I mean, it says that there could be a circumstance where the trustee finds there's an impediment of title. But I think there's actually language in that case that says that the trustee's duty is not to be overplayed in that circumstance. That their duty is conducting the sale. I'm not familiar with any case ever from the Supreme Court of Virginia, which has been sitting since 1779, that has expressed support for that duty that you put forward. Well, the quote I cite in my opening brief at page 24 is the trustee has an affirmative duty to seek assistance from the court to remove any clout on title, or if there's any doubt or uncertainty as to the debt secured or the amounts thereof. Well, I mean, there are conflicts all the time between the grantor and the grantee under a deed of trust. There are. I'm not aware of any case anywhere that says in that circumstance the trustee has any duty to stop the sale. I mean, do you have anything from the model jury instructions of Virginia CLE? Anything that says that? Well, I am reading the language. The trustee has an affirmative duty to seek assistance from the court to remove any clout on title. The context of this is a foreclosure. So prior to foreclosing in a non-judicial forum under a deed of trust that includes a power sale, the deed of trust started to show up in the 15th, 16th century. It was to be interpreted in favor of the borrower. It was supposed to be strictly adhered to to protect people from losing their homes to lenders without proper procedures or whatever being followed in a non-judicial forum. In that instance, the trustee is supposed to remain impartial, be an agent of both the lender and the borrower. And before proceeding to sale, if there is a dispute that needs to be resolved that addresses either a failure of a condition precedent or the amounts due or a clout on title, it has a duty. And in practice, Judge Agee, what that means is they cancel the sale and let us talk to the servicer and work it out. But what the case law says is they have a duty to seek the assistance of the courts. Well, I don't think that's a fair reading of Hudson, and I'm not aware of any other case from the Virginia Supreme Court that says that. In fact, the Supreme Court said in Hudson, if there are no real impediments in the way of a fair execution of the trust, then its aid is not necessary and the cost of the lawsuit ought not to be added to the cost of executing the trust. Here, all you've got is a dispute between debtor and creditor. It doesn't have anything to do with the title. So my problem is I don't see that you have a cause of action. And even if you did, I don't see how you've pled any damages. I understand the damages part. Let me speak to the first part of the court's concern. And that is, this isn't even disputed by the defendants. They understand that there's dispute. Their argument, their pushback against me is, we canceled the sale after you filed the lawsuit. And their argument was, given there's no sale, we cannot have breached our fiduciary duty. That's their position. They're not even saying they don't have this duty.  That's not their position. Are you framing what the duty is? Duty of impartiality, granted. The problem is, does it extend to something such as here, the cancellation of the sale? And if it does, and the trustee, in fact, cancels the sale, then that would support an action by the other side. Under your theory, to do the very same thing. So the trustee can't win in this deal. If he conducts the sale, then you say, hey, he breached the duty to me. If he doesn't do it, then the other side comes up with it. And as Judge Achey has pointed out, I think, at least looking at the Virginia case law, and certainly I yield to Judge Achey on that, there's only one case, and that's a trial court case, that even says anything like what you're saying here. And maybe someone ran with that because we're talking about a trustee type thing, and maybe that has some level of influence on the trustee and how you act. But I don't, that one case, other than that, there's nothing that I have found says anything close to what you're saying. I agree with Judge Achey on that. And are you relying on that trial court case for that proposition? How's that working for you? I'm relying on the Bremer case for the proposition that the trustee's failure to adhere to its duty against the sale on notice of a bona fide dispute results in the ability of a court of equity to, if it feels appropriate, to award attorney's fees to the homeowner for having to go to court because the trustee abandoned its duty. Now, you're right, Your Honor. Didn't we say in Wilmer, we didn't think much of that? We didn't think much of that. You did, but of course. You think we will think differently now, huh? Well, no, no, I'm not trying to change the court's view. The court was correct in Wilmer. And as I pointed out, there's a distinction. In other words, I don't want to call it confusion when my argument began, but to point out that equity is the trustee, the deed of trust is the seminal point. In Wilmer, he was trying to impose that duty on the trustee of the securitized remit, which in this case is Bank of New York Mellon. Bank of New York Mellon doesn't have a duty to remain impartial and cancel a sale or otherwise have any fiduciary duties. The trustee to the trust does. So the court properly ruled in Wilmer. There was just respectfully a slight lack of the distinction. Well, I must admit, you know, it's been over 30 years since I practiced law and I have to remind myself of that. And real estate law was something I did quite a bit of. But I'm thinking of a trustee. And, you know, even though the trustee is holding something of an equitable title, legal titles with the actual person that purchased it, it still is that equity there in terms of the trustee's fiduciary duty is really something on the part of the bank. And so even though there is that impartiality duty that seems to be apparent here, because it's sort of that's the reason you get someone, a third party involved in this is to make sure you're not going directly against each other. I'm not sure it extends anywhere near where you were going with it in terms of the duties of a trustee. That might be a bit much to make those kinds of calls when, you know, he's a conduct the sale of foreclosure and make sure that's fair, make sure it's impartial, make sure it's done right. But then the basis for it, there has to be other avenues for you to stop the sale outside of the trustee, aren't they? Well, in Matthews versus BHS mortgage corporation, that was a case where the Supreme Court of Virginia came out and clearly stated that where conditions precedent were satisfied, a foreclosure couldn't go forward. And there's a footnote in the opinion that the plaintiff, the homeowner has the right to go to court before the sale. Now, again, that didn't happen in Matthews versus BHS. There was no foreclosure that happened, but they did allude to the fact that not allude to expressly stated where conditions precedent aren't satisfied, then the power sale can't be invoked. And that's more appropriately what I'm saying. I'm using the figures to say, are you saying that it can't be enforced, that they can go to court for it or by going to the trustee and says, okay, we have here evidence that you shouldn't do this. So stop it. Or do you take it to the, it just, I mean, I don't know how that makes him impartial. He's got to make a decision. And, you know, you would like to keep the work of a trustee for those who have served in those positions, pretty ministerial in what he's doing and to follow based upon what's before them at the time. Someone comes up with an allegation and says, wait a minute, I've got a problem here. They are overcharging me and I, that's the reason I didn't pay. You need to stop this sale. That could come up in a hundred different cases. Every time there's, I mean, someone who's in a position, your client can come up with something they perceive to be a valid reason to say, this is why I didn't pay. So stop this sale. But the, but the evidence on his face is showing he didn't pay. Everything is fitting right on all fours with a foreclosure sale. And you've got a trustee, trustee impartial, but not a judge in the case. So I'm not surprised there's not another case like this. Other than the, the Beamer case. But I don't think that case is anything to this. In fact, I don't even think it's guidance or anything else. It's a, it's a, it's not binding on any other court in, not even probably not even on the court itself that, that did it. No, but, but a judgment I would say it is, it is a reflection of public policy principles in governing this incredible power in a nonjudicial. And that is so that homeowners don't get run over by more powerful lenders. But when it comes to the foreclosure, the nonjudicial foreclosure process, it's, they are for 500 years, for 400 years it's been very clear that the, you've got a lot of other facts in this case that takes this away from your client. Just being totally innocent in this thing here. I mean, there's a, there's a lot going on in this case and we don't want to get in  I just want to stick with what we're dealing with right here in terms of this action. If we get into what homeowners do and that sort of stuff, that's a whole different ballgame because I mean, he just didn't pay. Well, that's nuts. It is a question of whether or not you went back and forth, but that's not what we need to deal with here. We have a specific issue here. Do you have, as Judge Agee alluded to, even cause of action that can be brought? Yes. And my time is up. I'd like to save my remaining time for rebuttal. But I can answer if you'd like it or I can wait. We'll hear from you in rebuttal. Thank you. Okay. May it please the court. My name is Don Pocock. I represent two of the FLEs in this case, Bank of New York Mellon and Select Portfolio Servicing. I'm sharing the response time today with Mr. Robert Michael, who represents the trustee equity trustees. As the court has highlighted through its questions during the opening argument, there is no case in Virginia that establishes a cause of action for breach of fiduciary duty occurring before a sale takes place. The only cases that observe a cause of action for breach of fiduciary duty under Virginia law are claims that arise as a result of the conduct of the sale. Because the duty of the trustee of impartiality is to ensure that the sale that takes place protects both the debtor and the creditor by being as fair as possible so that the debt can be paid and the debtor's equity can be protected. That's the duty of a trustee is to conduct a good sale. And so the cases that look at this fiduciary duty, which is imposed outside of the terms of the deed of trust, observe that a trustee breaches his fiduciary duty if he engages in some sort of self-dealing or collusion with the purchasers, fails to conduct a proper sale or fair sale, or where the sale price itself is grossly inadequate such that it shocks the conscience. If we agree with the statements you've just made, does that end the case? It ends the question as to removal and it ends the question as to equity trustee because the case was properly removed on the grounds that there was no possibility of any recovery from the trustee and therefore jurisdiction is proper in the district court. As you've highlighted, that's a threshold question and critical to the analysis today. There is no cause of action against the trustee when a sale does not take place. This sale did not take place. The district court acted appropriately in dismissing equity trustee and denying the motion to remand. Even if there were a cause of action for breach of fiduciary duty, the remedies that are available against the trustee are very limited. They're either you enjoin the sale or you rescind the sale. But there's not even a case under Virginia law that establishes that there is a claim for damages against the trustee. If the sale has not taken place, the sale should be enjoined. If the sale has taken place, it can be rescinded and set aside. But even under those circumstances, the trustee would still be a nominal party because the trustee has no interest whatsoever in the outcome of that case. Here there was no injunction sought. The sale didn't take place, that's true. But the fact that the sale didn't take place and we make an issue of that in this case is not to hide behind the facts of the case or to avoid liability. The arguments that have been made in the appellant's brief seem to impose upon the trustee a responsibility to advocate a claim on behalf of the debtor. And the trustee doesn't have that responsibility. Let's assume, counsel, that our jurisdiction is appropriate here. Mr. Tayol says he didn't have to pay. Correct. So, what's your response to that? Well, the breach of contract claim that's alleged here is based upon a loan modification agreement that was attached as an exhibit to the complaint and as plain as anyone can see. The modification agreement provided for a specific payment over $7,000 a month. Mr. Tayol accepted those terms and didn't perform them. And there was no evidence whatsoever that he ever attempted a $7,000 payment or that he tendered one that wasn't accepted or anything else except for the fact that he disputes that the written agreement is not actually the deal. The allegation on this breach of contract claim is that even though there's a written agreement, there was some other agreement for a lower payment, which is contrary to law. Mr. Tayol was presented a copy of this document. It was in writing. He could review it. It was even highlighted ahead of time as to the amount of the payment and was asked whether or not that made a difference in moving forward with it. It was accepted. The evidence showed no genuine issue of any material fact that my clients billed the account consistent with the loan modification agreement. There was no payment made. That's a default. There are a lot of arguments that are made in the appellant's briefs about something called lender-placed insurance. This is not a case about lender-placed insurance. Lender-placed insurance has to do with situations where the debtor is making payments on their loan and insurance lapses and a policy has to be provided to cover. That's not what happened here. What happened here was this property was foreclosed. Title passed. It was in the name of the bank. And this loan modification agreement was negotiated as a means of resolving a suit filed in 2017. So the type of insurance that's at issue here is more properly labeled something called REO insurance, and that's to cover the lender while the title's in their name. But the point is that this insurance was not imposed due to some sort of term or condition in the existing note in deed of trust. It was imposed because title had passed. And it was disclosed. And the cost of it was very high. But it was disclosed. And Mr. Teil accepted that and agreed to pay it. And after the loan modification agreement was signed and my clients began billing the account again, they managed the account consistent with the note in the deed of trust. Statute called RESPA is the federal law that governs the administration of escrow accounts. And RESPA does not require that an escrow account be analyzed or adjusted just whenever the debtor deems it to be the case. RESPA requires that an escrow account be managed once a year. Well, here the theory of breach of contract is that my clients had a responsibility to adjust the escrow payment immediately as soon as the loan modification agreement was signed. There's no term anywhere in any contract that imposes that duty on my clients. Now, they did, in fact, conduct an analysis of the account. They did, in fact, analyze it consistent with RESPA. They did, in fact, reduce the escrow payment later on. And they serviced the account. And there's no evidence that they didn't service it consistent with federal law. The fact of the matter is Mr. Teil just didn't pay. And Mr. Teil has taken the position that he doesn't owe any of the prior payments because they were too high in his estimation. That is not a breach of contract case. There's nothing in either note or deed of trust or loan modification agreement that would impose the duties that are assumed in the breach of contract claim asserted in this complaint. The district court recognized that. The district court looked at the evidence and saw that the statements that were sent to Mr. Teil were consistent with the loan modification agreement. Found that there was no genuine issue of any material fact. Properly dismissed the case. Now, I see there are very few questions. At this point, I think I've covered the points that I intended to make. We ask that this court affirm the district court in full. That the denial of the motion of remand should be affirmed. The dismissal of the trustee should be affirmed. And the summary judgment in favor of my clients should also be affirmed. Thank you very much. We'll hear from your colleague, Mr. Michael. Thank you, Judge. Good morning, and may it please the court. I'm Robert Michael. I'm appearing today on behalf of Equity Trustees. As you have heard, Equity Trustees was the trustee under the deed of trust that is at issue here today. I'm going to jump right into the duty issue because the duty of a deed of trust trustee in Virginia as well established has been for a century in Virginia. It includes all of the duties that are in nature and may be laid out in the deed of trust and the only extra contractual duty. The only common law duty imposed upon a trustee in Virginia is the duty of perfect fairness and impartiality. The appellant's counsel has said that the trustee can't proceed when the borrower comes forth and makes a legitimate claim. And I would agree with that if they've made a legitimate claim. There are lots of caveats to what the appellant's counsel has said that I think are required to be pointed out to the court. I think it's standard, the duty of perfect fairness and impartiality. But I believe that the record shows that Equity Trustees satisfied that duty in this matter. Mr. Tyal will ask you to impose a duty of partiality, a duty where the borrower is treated partially to the lender. If he comes forward and makes any allegation of fact, unfounded or otherwise, that he says he thinks you want to cancel the sale over, trustee is required to cancel the sale, proceed to a court of equity and post a case on his behalf. And that is not impartiality. That is a duty of partiality that Mr. Tyal is seeking to impose. This court is an impartial arbiter of justice, but it makes decisions every day based upon facts and law. And when a trustee is presented with documents from a lender and information from a lender, it has every right to rely upon those documents and information. The Supreme Court has said exactly that. What happens at this point? I mean, he sought to have the trustee to cancel the sale, files the lawsuit, and that cancels the sale, as I understand it. So the sale hasn't happened yet. What's going on with the case at this point? Ultimately, you can achieve a result by doing things like this, maybe file a lawsuit, that cancels the sale. That does what the trustee didn't do. And what's going on with the property now? I guess it's cut off the record, but it's interesting to me, because that's where we are. And the kind of novel question that's before us. Well, Judge Wynn, I think that's a really insightful question. And right now, there is nothing happening with the property. Virginia employs a wholly nonjudicial foreclosure process. And unless and until a trustee comes and schedules a new sale, which it won't do until it is requested to do so by the lender, there will be nothing happening with the property. Mr. Tial still owns the property, and again, it's beyond the record, but it's my understanding that there's nothing happening from it. So there's nothing happening with the property at all. And the filing of the lawsuit didn't automatically cancel the sale. The filing of the lawsuit just perhaps caused the impetus for the lender to ask for the sale to be canceled. There are many circumstances in Virginia where a trustee, in the face of a lawsuit, will proceed to foreclosure. And that was the case in the Virginia Supreme Court case of Tamara Young-Allen v. Bank of America and equity trustees. And we've seen this in our briefs. And in that case, the facts are on all fours with this case except that the trustee proceeded. The borrower in that case alleges that the preconditions to foreclosure and acceleration haven't occurred. Trustee looks at the allegations, looks at the lender's records, determines that those are unfounded allegations, proceeds to sale. And the Supreme Court says that the trustee doesn't automatically violate any presupposed duty by proceeding to sale under those circumstances. It's a duty of partiality. In fact, the Supreme Court says it would grind everything to a halt in enforcement of the deed of trust in Virginia. It would create an... Why did the trustee not continue with the sale then in this case? I'm not certain it's in the record, Your Honor, but the trustee was requested by the servicer to cancel the sale, which the trustee would always do. And in Virginia, when there's a contest, a trustee would prefer, a proper trustee, I would suppose, would prefer to have the parties agree to cancel the sale. And so Mr. Tal comes forward and says, we'd like you to cancel the sale. Trustee looks at things, says, we don't think there's a proper basis to cancel the sale unilaterally. But if the servicer comes forward and says, hey, we want you to cancel the sale, we see a lawsuit out there, we want to resolve that. The trustee is the fiduciary to both parties, and both parties want the sale canceled. Trustee does so at that point, and that's what happened here. Well, it just seems to me, now you've got a piece of property over there at the plaintiff's own, and I don't know what it's worth at this point, but it's an interesting scenario of how procedurally something has happened here that couldn't happen, but it happens anyway, which is the cancellation of the sale delays it, and circumstances change. I don't know where this case is going from here, but those are extra questions, and I was just curious about it. I think we fleshed out the other issues pretty well. Thank you, Judge. I see that my time has expired. I just ask the court to affirm the dismissal of the trial court of equity trustees, and I appreciate your time. Thank you very much. Mr. Brown, do you have some rebuttal? Thank you, Your Honor. Let me begin by saying very respectfully that the only context that this whole concept comes up of the duty to remain impartial and seek the assistance of the courts  It never comes up if it's just a random letter you want to send to your bank or your servicer. The court looks at the letter I sent to equity trustees dated March 18, 2019. It's a JA-106. I'm explaining my efforts to try to get the servicer to recognize the problem. So then I present that problem to the trustee, and the duty for the trustee is to remain impartial, to not injure one side or the other. If I present them with evidence, not allegations or spurious or meaningless things, and the person hasn't been satisfied and the power of assailant can't be invoked because there is, in essence, no default, then they... Why is your lawsuit not directly against the bank or the servicer instead of the trustee? I mean, it is the bank that you say is forcing a foreclosure illegally. And that would sort of take the... I mean, that might be a reason that then it would be counseled, but you're attacking the trustee for not doing something here. Well, I had a declaratory action counter on the original complaint. But once the lawsuit, once the foreclosure is canceled, I don't need the declaratory action if the bank can't proceed to foreclose and the foreclosure would have been in error. Let me be clear, the Young-Allen opinion was a little different. So you're saying that if the bank hadn't counseled the foreclosure, you would have proceeded on with the declaratory action? Yes, because the rights of the parties would have been issued before the court would have gone forward. Yes, I would have. But I want to be... I have five minutes to try to get this court to persuade this court to understand this trustee duty is very important. It affects homeowners all across the Commonwealth. Who's going to take that job if they have this kind of duty on them? Who would take this job? Because they get paid by the bank. You face this kind of liability. Can you imagine a trustee malpracticing insurance rates if they serve as counsel for the bank under their other name, Behrman, Ward, and Wood, and then the related entity, equity trustees, the other name on their door, becomes the substitute trustee, and that's allowed. That doesn't mean that conflicts are going to be ignored. They still have a fiduciary duty to the borrower to not let the lender run roughshod over them. And if there's no duty of the trustee to cancel a sale in light of a bona fide dispute, you'll have all these lenders out here just saying, just foreclose. And once you foreclose, look at Young Allen. There's not a whole lot a borrower can do, so let's just ignore anything the borrower says and foreclose on them. That cannot be the public policy statement this court wants to set. The trustee has a duty to both parties and to not foreclose if the right to foreclose is not there. And if I present the trustee with sufficient evidence that the right to foreclose is not there, then their duty is to cancel the sale. And our real dispute here today is about whether or not they're waiting to cancel after I file a suit entitles me to attorney's fees. And that's where I've cited the Rolex v. Atlanta Coastline Railroad Company case from this court in 1951 that basically says the Court of Equity may or may not award attorney's fees  And the issue here is for the motion to remand. Can the court say there is no possible way under the standard of fraudulent joinder that I could have prevailed in the state court and had a state court agree to award attorney's fees for Equity's failure to respond to my letter and cancel the sale forcing me to go to court when the case law says they have to go to court and seek the assistance prior to going to sale. That's the context. That never comes up if it's not a foreclosure. Whether you look at Squire v. that I didn't cite the Matthew v. PHH opinion is of assistance and the Crosby v. ALG trustee opinion is great because it really reasserts that there is this duty to remain impartial. Now the breach. You say this is Virginia law and it's very difficult to determine that. Nobody seems to indicate that but you think you would prevail if we certified that question on that issue with respect to Robert Michael. Fine gentleman just conceded yes we have a duty to cancel the sale. If we have a reason to do so we have to make that call. He just conceded that and in this case the lender told them to cancel which is a further problem. When they have the duty to remain impartial they should be waiting to hear from the lender but that's another issue. I think I would prevail on the certification of the duty. I don't know if I would prevail. I believe I could prevail on the issue that the failure to cancel it results in the borrower incurring attorney's fees. Just as you said in the Rolex case. You say about how when the damage of the inconsequential result is so in favor of one party or the other. Look where we are. My client has had to go to court fight motions, go to an appeal all to resolve a pretty clear dispute on the face of the documents. Did my client not pay? No. Did he not comply with the terms of the loan modification of the original loan docs? No. The loan modification said the payment was $4,000 and provided an estimated escrow payment. It was understood and agreed by counsel for SPS that the REO insurance counsel spoke of can only be in place when they own the house. That makes perfect sense. So why in the CIFAS affidavit does Mr. CIFAS say they placed those charges on my client's loan balance? They're just the purchaser at the sale. I just want to leave. Is this the way a case like this should be handled? I mean, is this the way someone who's in position of client should handle this that you just don't pay, you dispute it, goes to foreclosure? What if you paid and then you brought the action against the bank for failing to, for overcharging you? I mean, there are all kinds of statutes that deal with stuff like that, you know. That's a power play. They can trouble fees and do a lot of things, a lot of disincentives for banks to overcharge. Correct. Why would you go this route? And with the last 20 seconds, I want to say why. Because my clients, homeowners out here are not billion dollar financial institutions. And when they're faced with a $7,000... My client's a real estate agent, isn't he? Well, that doesn't mean he's rich. I didn't say he was, but I'm asking if he's savvy in terms of how to handle real estate matters. He understands that. He's not the regular guy who's just buying a house out there. He understands banks. He understands this whole transaction. This is not an ordinary home transaction. My time is up, though, Your Honor. I see. You can answer the question. Sure. You don't pay because they can't charge you a fee for whether you want to call it LPI or REO. And they can't declare a default for a failure to pay a fee they can't charge you for. And if they won't accept a partial payment, the court is saying, well, just put out the $21,000 for the first three months and then go to court and try to get your money back. Yes, that's an option. But when we're talking about who we're dealing with here in a non-judicial foreclosure state, when we're supposed to be protecting borrowers from shenanigans by servicers, which is what this is, the $70,000 of corporate advances added to my client's account and eviction fee, LPI insurance that he shouldn't have to pay for, REO insurance that why would that be on my client's account? They acknowledge it should come off as soon as title is in his name. They don't take it off and they don't want to remove it until June 1st and declare default because he didn't pay what they can't charge him for. And the result shouldn't be where we are now. It should be they cancel the sale and we work it out. But unfortunately, this is where we are because of the posture that the trustee's decision put us in. All right. I think you've answered the question. Thank you very much. Thank you, Judge Miles. Thank you. We will go directly to our fourth case.
judges: Diana Gribbon Motz, G. Steven Agee, James Andrew Wynn